UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SCOTT ALAN DUNHAM,

       Petitioner,                                    Hon. Richard Alan Enslen

v.                                                     Case No. 1:06-CV-169

MARY BERGHUIS,

       Respondent.
_____/


## REPORT AND RECOMMENDATION

       This matter is before the Court on Dunham's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Dunham's petition be **denied**.


## BACKGROUND

       As a result of his alleged sexual assault of then nine-year-old B.L.S., Petitioner was charged with one count of First Degree Criminal Sexual Conduct and two counts of Second Degree Criminal Sexual Conduct. (Trial Transcript, June 29, 2004, 9-10, 77). Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

1

**B.L.S.**

She testified that she attended school with Petitioner's two children. (Tr. 74-79). She testified that on a night in the "middle" of June 2003, she and her two siblings spent the night at Petitioner's residence. (Tr. 76-80). After eating dinner, Petitioner and the children began watching a movie. (Tr. 80-81). Petitioner's wife went to her bedroom to sleep. (Tr. 81-82). Petitioner then asked B.L.S. to "sit on his lap," which she did. (Tr. 81). Petitioner then placed a blanket over himself and B.L.S. (Tr. 82-83). Petitioner then began to penetrate B.L.S.'s vagina with his finger. (Tr. 83-85). B.L.S. "whispered" to Petitioner to "please stop." (Tr. 85). Petitioner "didn't stop," but instead "just kept doing it." (Tr. 85-86). B.L.S. again "whispered" to Petitioner to stop touching her. (Tr. 86). Petitioner stopped. (Tr. 86). B.L.S. testified that she whispered her requests to Petitioner because "it was kind of embarrassing" and she "didn't really want anyone to hear." (Tr. 86-87).

After watching movies, the five children "went in to the tent" where they were going to sleep. (Tr. 86-88). Petitioner accompanied the children and remained in the tent. (Tr. 86-88). It was a large tent, with three separate sections. (Tr. 87-88). Petitioner was the only adult in the tent. (Tr. 88-89). At some point during the night, B.L.S. awoke because Petitioner was again touching (but not penetrating) her vagina. (Tr. 89-91). B.L.S. asked Petitioner to stop. (Tr. 91). Petitioner stopped touching B.L.S., but then told her "that he loved [her] and that he wanted [her] to be his daughter." (Tr. 91). B.L.S. went back to sleep, but was soon awakened when Petitioner again began touching (but not penetrating) her vagina. (Tr. 91). B.L.S. began crying and asked Petitioner to stop. (Tr. 92). Petitioner complied. (Tr. 92). After returning home, B.L.S. wrote a note to her sister, C.S., describing what Petitioner had done to her. (Tr. 100). C.S. later gave the note to her mother. (Tr.

100).

**C.S.**

C.S. is B.L.S.'s sister. (Tr. 123). C.S. accompanied B.L.S. to Petitioner's residence on a night in the "middle" of June 2003. (Tr. 123-24). C.S. was ten years of age at the time. (Tr. 123). C.S. testified that while she and the other children were watching a movie, she observed Petitioner and B.L.S. sitting together with a blanket "over each other." (Tr. 124-28). C.S. testified that Petitioner's wife was not present when they were watching movies. (Tr. 128-29). When Petitioner and the children went to the tent to go to sleep, Petitioner slept "next" to B.L.S. (Tr. 130-31). C.S. testified that she later heard B.L.S. crying. (Tr. 131). C.S. testified that after returning home, B.L.S. gave her a note, which she subsequently gave to her mother. (Tr. 133).

**Patrick Erway**

Erway testified that he was employed as a detective with the Grand Traverse Sheriff's Department. (Tr. 146). Erway was subsequently assigned to investigate the allegations of sexual assault which B.L.S. made against Petitioner. (Tr. 146-47). When Petitioner was questioned about B.L.S.'s allegations, Petitioner told Erway that "he didn't recall." (Tr. 149). Petitioner then stated that "he could see himself touching her." (Tr. 149). Petitioner then stated that "he hoped like heck it didn't happen," but that "he couldn't recall." (Tr. 149).

**Dr. Michael Hayes**

Dr. Hayes testified that he was a clinical psychologist. (Trial Transcript, June 30,

3

2004, 192-93). The doctor testified that he examined Petitioner on a single occasion and also reviewed his medical records. (Tr. 193-94). According to Dr. Hayes, his examination of Petitioner took longer than is normally the case because Petitioner is "very slow and deliberate and has memory - - memory issues." (Tr. 193-94). The doctor testified that Plaintiff "has experienced a closed head injury and continues to experience residual effects afterward." (Tr. 194). Dr. Hayes concluded that Petitioner's closed head injury is "probably" the reason he experiences confusion and memory difficulties. (Tr. 194-95).

**Barbara Dunham**

Dunham is Petitioner's wife. (Tr. 199). Dunham testified that she remembered the night in question when B.L.S. and her siblings visited her residence. (Tr. 199-200). Dunham testified that Petitioner and the children watched two movies, each of which lasted "probably about two hours." (Tr. 205). Dunham testified that while Petitioner and the children were watching movies, she was working at her computer, which was located "right behind them." (Tr. 200-01). Dunham testified that while B.L.S. was sitting next to her husband, a blanket was never placed over them and B.L.S. never spoke to Petitioner. (Tr. 201). Dunham further testified that during the time the children watched these two movies she never left her computer or went into another area of the residence. (Tr. 205-06).

**Scott Dunham**

Petitioner testified that he remembered the events of the night in question. (Tr. 218). He testified that during the time he and the children were watching movies, his wife was sitting

4

"directly" behind him at her computer. (Tr. 217). Petitioner denied ever touching or penetrating B.L.S.'s vagina. (Tr. 213-15). Petitioner testified that following the night in question, he went to B.L.S.'s residence on at least one occasion. (Tr. 222-23). According to Petitioner, when he arrived at the residence, B.L.S. "ran up to [him] and gave [him] a hug." (Tr. 223). Petitioner also testified that following this alleged incident he encountered B.L.S. at their school. (Tr. 223-24). Petitioner asserted that on this occasion, B.L.S. again "run up and give [him] a hug." (Tr. 224).

On cross examination, Petitioner acknowledged that while he was unable to remember the events in question when he spoke with Detective Erway, he was nonetheless able to presently recall "all" the events of the night in question. (Tr. 225-26). When he was asked whether he recalled telling Detective Erway that he "could picture" touching B.L.S., Petitioner responded, "you can tell me anything and I can picture it in my head, so I was telling the officer, was, yes, I could picture that in my head, but I know that would be a false memory that would not be a true memory, I know that for a fact." (Tr. 228-29).

**Linda S.**

The parties stipulated that if Linda S., B.L.S.'s mother, had been called to testify she would have testified as follows:

> That C.S. had given her a note written by B.L.S., Linda S. didn't believe the note, disposed of the note and didn't believe the incident occurred at that time. She was not certain B.L.S. was being truthful.

(Tr. 235-36).

Following a jury trial, Petitioner was convicted of one count of first degree criminal sexual conduct and two counts of second degree criminal sexual conduct. (Tr. 279-84). In

5

fashioning Petitioner's sentence, the trial court observed that this was the third time that Petitioner had been convicted of sexually assaulting a young girl. (Sentencing Transcript, July 30, 2004, 14). On the conviction for first degree criminal sexual conduct, the Court sentenced Petitioner to serve 10-40 years in prison. (Tr. 16). With respect to the two convictions for second degree criminal sexual conduct, Petitioner received sentences of 7.5-15 years. (Tr. 16-18). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claims:

> I.   Over defense objection the investigating detective was improperly allowed to testify as an expert in order to bolster the prosecution case with irrelevant and inadmissible testimony that it was not unusual for victims of child sexual abuse to have contact with their abusers even after the abuse occurred.
>
> II.  Defendant Scott Dunham should be resentenced and the presentence report should be corrected because the sentencing judge relied on incorrect information and improperly refused to correct the PSIR, despite the defense denial that Dunham's mother made the prejudicial statement that was attributed to her.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Dunham*, No. 257548, Opinion (Mich. Ct. App., Oct. 11, 2005). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request for leave to appeal, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Dunham*, No. 129904, Order (Mich., Dec. 27, 2005). On March 8, 2006, Petitioner initiated the present action in which he asserts the same two claims identified above.

## STANDARD OF REVIEW

Dunham's petition, filed March 8, 2006, is subject to the provisions of the

Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4

(6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the

8

factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

## ANALYSIS

**I.        Evidentiary Claim**

On cross-examination, B.L.S. testified that she encountered Petitioner on several occasions (at her home and at school) following his sexual assault of her. (Trial Transcript, June 29, 2004, 111-12). When questioning Detective Erway, the prosecutor asked how many cases of sexual assault he had investigated, at which point Petitioner objected. (Tr. 163-64). Outside the presence of the jury, the prosecutor stated that:

> Judge, I'm seeking to lay a foundation based upon the experience of the officer with dealing with children who have been sexually abused or to lay the foundation that it is not uncommon for the child to still be in the company of the abuser or have contact with the abuser. I'm not going into whether or not the officer believes B.L.S. or not, because obviously that's for the trier of fact. It's simply because I believe there has been some testimony brought out by defense that she has had contact with him, and I believe this is important for the jury to understand.

(Tr. 164-65).

In response to Petitioner's objection, the trial court concluded that Detective Erway could testify as an expert solely as to the issue of whether it is "common for the child victim to have subsequent contacts with the abuser." (Tr. 165-68). The court further instructed the prosecutor:

> You need to lay a foundation, how long, what number of cases, how much experience Detective Erway has. If he started doing this in November, maybe he doesn't have enough. If he's been doing it for

9

        a long time, hundreds of cases, maybe he does but you need to lay a foundation.

(Tr. 168).

        When the jury returned, the following exchange occurred between the prosecutor and Detective Erway:

> Q: You've indicated that most of your work is with children who have been sexually abused, correct?
>
> A: Child abuse and sexual offenses, yes.
>
> Q: About how many cases did you say you been involved in?
>
> A: In the last three and a half to four years anywhere from 350 to 450 cases.
>
> Q: And you have had specialized training outside of these investigations?
>
> A: Yes.
>
> Q: Based upon your experience, sir, is it not uncommon for victims to have contact with the abusers, even after the abuse has occurred?
>
> A: Not uncommon at all.

(Tr. 172).

        Petitioner asserts that the admission of this testimony was improper because Detective Erway was permitted "to bolster the prosecution case." Generally, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Habeas relief is warranted, however, if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Clemmons*

*v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). This requires Petitioner to demonstrate "actual prejudice" resulting from a constitutional error. *Clemmons*, 34 F.3d at 357.

To establish constitutional error, Petitioner cannot simply argue that the trial court's evidentiary ruling was improper, as "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, Petitioner must establish that his conviction violated the Constitution, laws, or treaties of the United States. *Id.* In this respect, it is recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512; *see also*, *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).

Fundamental fairness does not, however, "require a perfect trial," *Clemmons*, 34 F.3d at 358, and courts have defined those violations which violate fundamental fairness "very narrowly." *Bugh*, 329 F.3d at 512. State court evidentiary rulings do not offend due process unless they violate "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (citations omitted).

Petitioner asserts that the testimony at issue was introduced in an effort to "bolster the prosecution case." The Court notes that any evidence that the prosecution introduces is intended to bolster its case, just as the evidence introduced by Petitioner was intended to bolster his position. To simply assert, therefore, that the detective's testimony bolstered the State's case fails to advance Petitioner's cause. Rather the relevant question is whether admission of the detective's testimony *unfairly* bolstered the State's case and thereby violated Petitioner's constitutional rights.

Michigan Rule of Evidence 702 (which is identical to Federal Rule of Evidence 702)

provides as follows:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Michigan Court of Appeals found that the testimony in question was properly admitted, stating that:

> The detective had been investigating abuse and sexual abuse cases for over 3 ½ years; he had conducted 350 to 450 abuse investigations; he had between 150 to 180 hours of training in interviewing suspects, witnesses, and victims; and he took various psychology courses during his undergraduate education. This evidence established the detective's knowledge, experience, and training to understand and conduct sexual abuse investigations, including the reactions of sexual abuse victims after the abuse. Furthermore, the relevant evidence assisted the trier of fact in determining a fact in issue, specifically whether the victim's later contact with defendant indicated that the abuse never occurred. As our Supreme Court observed in *Peterson*, "An expert may testify regarding typical symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim *or* to rebut an attack on the victim's credibility.
>
> In this case, the detective limited his expert testimony to explaining that it is common for victims of sexual abuse to continue their ordinary relationship with an abuser. The detective's testimony shed light on any apparent inconsistency between the victim's testimony about her abuse and her testimony about her later, uneventful encounters with him. Because the jury could have misconstrued the later contact as indisputable evidence that the abuse never occurred, the admission of the evidence was not an abuse of discretion.

*People v. Dunham*, No. 257548, Opinion at 2 (Mich. Ct. App., Oct. 11, 2005).

The Michigan Court of Appeals reasonably concluded that the evidence in question had been properly admitted. Thus, Petitioner cannot establish that the admission of this evidence denied him due process or the right to a fair trial. Accordingly, this claim presents no issue on which habeas relief may be granted.

**II.	Sentencing Claim**

At sentencing, Petitioner objected to certain items contained in the pre-sentence report. One of the items to which Petitioner objected concerned a comment attributed to his mother and sister. The pre-sentence report apparently contained a statement by the investigating officer that Petitioner's sister and mother "were not surprised" that Petitioner was charged with sexual assault of a child "because [Petitioner] always wanted to work closely with kids and they have told him in the past to keep his distance so nothing like this offense could happen." (Sentencing Transcript, July 30, 2004, 5-6).

Petitioner objected to this comment on the ground that Petitioner's mother and sister denied making any such statement. (Tr. 6). Petitioner also indicated that his mother was present, suggesting that she would testify on the subject. (Tr. 7). The court denied Petitioner's objection to this particular comment. (Tr. 7). The court observed that Petitioner's mother "may have said something that now under the glare of her - - the pressure of the situation and her son's predicament she might want to revise, but that was what was said to Agent Welch, so we'll leave it in the report." (Tr. 7). Petitioner asserts that his constitutional rights were violated because he was sentenced on the basis of inaccurate information.

It has long been recognized that when imposing sentence, "courts have broad

13

discretion to consider various kinds of information." *United States v. Watts*, 519 U.S. 148, 151 (1997); *see also*, *Roberts v. United States*, 445 U.S. 552, 556 (1980) (a "fundamental sentencing principle" is that "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come").

As the *Watts* Court further observed, "[h]ighly relevant - if not essential - to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and circumstances." *Watts*, 519 U.S. at 151-52. Sentencing courts may even consider past criminal behavior which did not result in a conviction, or for which the defendant was never tried. *See Id.* at 152 (citations omitted); *Collins v. Buckhoe*, 493 F.2d 343, 345 (6th Cir. 1974) (citations omitted).

Sentences imposed on the basis of "misinformation of constitutional magnitude," however, may present grounds for habeas corpus relief. *Roberts*, 445 U.S. at 556 (citations omitted). To prevail on a claim that he was sentenced on the basis of such misinformation, Petitioner must establish that "the disputed information was materially false and that the trial court relied on the information." *United States v. Andrews*, 240 F.Supp.2d 636, 638 (E.D. Mich. 2003) (quoting *Buckhoe*, 493 F.2d at 345-46).

Petitioner's claim fails for at least two reasons. First, Petitioner has failed to demonstrate that the statements at issue were inaccurate. The Court recognizes that Petitioner's mother was not permitted to testify at the sentencing hearing. Nevertheless, Petitioner could have secured affidavits (or other reliable evidence) from his mother and sister regarding this matter. Petitioner has failed to do so, however, and his unsubstantiated assertions do not establish the inaccuracy of the statements in question.

Furthermore, Petitioner has failed to demonstrate that the sentencing court relied on the allegedly inaccurate statements in question when imposing sentence. A review of the sentencing transcript reveals no evidence that the court relied on or in any way considered the alleged statements by Petitioner's sister and mother. Instead, the court focused on Petitioner's history as a serial sexual predator, facts the accuracy of which Petitioner does not contest. As the court stated:

> However, the defendant comes to us with some real problems in his background. There are two CSC convictions as a juvenile, 14 and a half, 15 years old, in which he committed sexuals conducts with two little girls, one was four and one was six and that is very distressing, because pedophilia is something that we always suspect is hard to get rid of. And, so, that leaves us with real concerns now that we have yet another offense, this time the girl being ten. He also committed a breaking and entering and stole the neighbor's bras it says, so, this as a juvenile again. So, we have a real strange fellow here, in terms of sexual interests and a willingness to act on them.

(Tr. 14-15).

In sum, Petitioner has failed to establish that the statements at issue are false or that the court relied in them when imposing sentence. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Dunham's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                        Respectfully submitted,

Date:  April 3, 2008                                  /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge